MITRA EBADOLAHI (CA SBN 275157)
mebadolahi@aclusandiego.org
SEAN RIORDAN (CA SBN 255752)
sriordan@aclusandiego.org
DAVID LOY (CA SBN 229235)
davidloy@aclusandiego.org
ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
P.O. Box 87131
San Diego, California  92138-7131
Telephone: 619.398.4187

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF SAN DIEGO AND IMPERIAL COUNTIES,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | Case No. **'14CV1272 BTM JMA**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, seeking the immediate release from Customs and Border Protection ("CBP") of the 2013 report prepared

by the Police Executive Research Forum ("PERF") regarding CBP's use-of-force policies and practices ("PERF Report").

2. In response to continuing public interest and controversy surrounding CBP's use-of-force policies and practices, and in particular to a letter sent by sixteen members of Congress seeking information about CBP's use-of-force policies and internal investigation protocols, CBP commissioned an external, independent review of its use-of-force policies and practices from PERF, a non-profit research organization.

3. PERF subsequently provided CBP with a report and recommendations regarding CBP use-of-force policies. *See, e.g.*, *Border Patrol Reportedly Rejects Recommended Curbs on Deadly Force*, Assoc. Press, Nov. 5, 2013, *available at* http://fxn.ws/1gBT1ny.

4. On February 21, 2014, Plaintiff American Civil Liberties Union of San Diego and Imperial Counties ("ACLU") submitted a FOIA request, via both an online form and certified U.S. mail, to CBP seeking the PERF Report ("the Request"). CBP received the hard copy of the Request on February 25, 2014. To date, CBP has failed to respond to the Request in any way, let alone to process the Request either "promptly," as required by FOIA for all requests, *see* 5 U.S.C. § 552(a)(3)(A), or in an "expedited" fashion, as Plaintiff requested, and as required by FOIA for certain requests, *id.* § 552(a)(6).

5. Plaintiff now files suit under FOIA for declaratory and injunctive relief, seeking the immediate release of the PERF Report.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over the FOIA claim and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and (a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–706.

7. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

8. Because CBP has failed to respond to Plaintiff's FOIA Request in the time allotted by the statute, *see* 5 U.S.C. § 552(a)(6)(A)(i), Plaintiff has constructively exhausted all administrative remedies and are entitled to file suit with this Court to enforce compliance with FOIA. *See* 5 U.S.C. § 552(a)(4)(B), (a)(6)(C).

## Parties

9. Plaintiff American Civil Liberties Union of San Diego and Imperial Counties is a non-profit, nonpartisan 26 U.S.C. § 501(c)(4) organization dedicated to the constitutional principles of liberty and equality.

10. The ACLU is committed to ensuring that the American government complies with the Constitution and laws in matters that affect civil liberties and human rights. The ACLU is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is

informed about the conduct of its government in matters that affect civil liberties and human rights.

11. Defendant CBP is a component agency of the Department of Homeland Security ("DHS").  It is headquartered in Washington, D.C. and has field offices throughout the country.

12. Defendant DHS is a Department of the Executive Branch of the United States government and an agency within the meaning of 5 U.S.C. § 552(f)(1).  DHS is headquartered in Washington, D.C.

## Factual Background

13. Since January 2010, at least twenty-eight people have died after an encounter with CBP officials.  *See* ACLU of New Mexico, Deaths and Injuries in CBP Encounters Since January 2010 (as of Feb. 19, 2014), *available at* http://bit.ly/1d1Ncx6.  At least ten of these individuals were U.S. citizens; six others were in Mexico when fatally shot.  *Id.*

14. According to an intensively-researched, three-part investigative report published by *The Arizona Republic* in December 2013, forty-two individuals have been killed by on-duty CBP officers and Border Patrol agents since February 2005.  *See* Bob Ortega and Rob O'Dell, *Deadly Border Agent Incidents Cloaked in Silence*, Ariz. Republic, Dec. 15, 2013, *available at* http://bit.ly/1kFNx08.  All but four of these deaths occurred along or near the southwest border.  *Id.*  The *Arizona Republic* found that "[i]n none of the 42 deaths is any agent or officer publicly

known to have faced consequences—not from the Border Patrol, not from Customs and Border Protection or Homeland Security, not from the Department of Justice, and not, ultimately, from criminal or civil courts." *Id.* The investigation concluded that the "appearance of a lack of accountability has been fed by a culture of secrecy about agents' use of deadly force." *Id.*

15. In 2014, there have been at least three additional CBP-related deaths. *See Mexico Condemns Shooting by U.S. Border Agent*, Assoc. Press, Feb. 20, 2014 (death of Jesus Flores Cruz near San Diego, California), *available at* http://bit.ly/1lRIarW; Jill Replogle, *Border Patrol Agent Fatally Shoots Suspect in Otay Area*, KPBS, Feb. 18, 2014 (same), *available at* http://bit.ly/1oO6ka7; Bill Hess, *CCSO Probes Border Patrol Shooting Death Near Portal*, Sierra Vista Herald, Jan. 21, 2014 (death of Gabriel Sanchez Velazquez near Apache and Portal, Arizona), *available at* http://bit.ly/1lRM4RR; Zeke MacCormack, *Border Patrol Agent Suspected in Hondo Killing*, San Antonio Express-News, Jan. 2, 2014 (death of Keith J. Martin near Hondo, Texas), *available at* http://bit.ly/1kpYAK2.

16. An especially troubling incident occurred in June 2010, when Anastacio Hernández Rojas was restrained, Tasered repeatedly, and beaten while surrounded by at least a dozen CBP personnel at the San Ysidro Port of Entry. Hernández Rojas was hospitalized for and later died of his injuries. *See* Randal C. Archibold, *San Diego Police Investigate the Death of a Mexican Man Resisting Deportation*, N.Y. Times, June 1, 2010, *available at* http://nyti.ms/MPVjpU. Two

eyewitnesses recorded videos of the incident; these recordings—which showed Hernández Rojas lying prone, handcuffed, and crying for help, contradicting the officers' claims that he was resisting arrest—were later aired by the Public Broadcasting Service ("PBS") in April 2012. *See* NEED TO KNOW: CROSSING THE LINE AT THE BORDER (PBS 2012), *available at* http://video.pbs.org/video/2225180660/. The San Diego Medical Examiner classified Hernández Rojas' death as a homicide. *Id.*

17. In response to the PBS documentary, sixteen members of Congress sent letters to DHS, DHS's Office of Inspector General ("OIG"), and Attorney General Eric Holder, seeking information about CBP's use-of-force policies and internal investigation protocols. *See* Press Release, Congressman José E. Serrano, Sixteen Members of Congress Call for Justice in Hernandez-Rojas Case (May 10, 2012), *available at* http://1.usa.gov/MPW82b; *see also* Letter from José E. Serrano et al. to Janet Napolitano, Secretary of Homeland Security (May 10, 2012), *available at* http://1.usa.gov/1hhAnGq; Letter from José E. Serrano et al. to Acting Inspector General Charles K. Edwards, Department of Homeland Security (May 10, 2012), *available at* http://1.usa.gov/1c4gsX5; Letter from José E. Serrano et al. to Attorney General Eric Holder, Department of Justice (May 10, 2012), *available at* http://1.usa.gov/1fleZZR.

18. CBP subsequently announced a three-pronged review of the agency's use-of-force policies. This review process included: (1) an internal review by

CBP's Use of Force Policy Division; (2) an external, independent review by PERF, a non-profit research organization, *see* Police Executive Research Forum, www.policeforum.org; and (3) a review by DHS OIG.

19.   A redacted version of the OIG report was released on September 12, 2013.  *See* Department of Homeland Security, Office of Inspector General, CBP Use of Force Training and Actions to Address Use of Force Incidents (Redacted) (Sept. 2013), *available at* http://1.usa.gov/1mf50OR.  On September 25, 2013, CBP posted an online summary of the Use of Force Policy Division's internal review. *See* U.S. Customs and Border Protection, Use of Force Reviews, Recommendations and Next Steps (Sept. 25, 2013), *available at* http://1.usa.gov/1j8Jbcr.  To date, the PERF Report has not been published.

20.   In late September 2013, CBP announced that it had received recommendations from these three reviews that "called for enhancements to use of force training and tactics, additional tools to provide for better analysis of use of force incidents and trends that will better inform policy decisions, a wider array of equipment options be made available to agents and officers, and improvement in particular areas of operational and tactical posture."  *See* Use of Force Reviews, Recommendations and Next Steps, *supra*.

21.   Yet as reported in the media, CBP expressly declined to adopt at least two of the central recommendations issued by PERF following its review of the agency's use-of-force policies.  First, the agency rejected PERF's recommendation

that border agents be barred from shooting at vehicles except in cases where the vehicle's occupants are threatening the lives of border agents.  Second, the agency rejected PERF's recommendation that border agents be prohibited from shooting people who throw objects at agents that cannot cause serious physical injury.  *See, e.g.*, Brian Bennett, *Border Patrol's Use of Deadly Force Criticized in Report*, L.A. Times, Feb. 27, 2014, *available at* http://lat.ms/1jDBh0y; *Border Patrol Reportedly Rejects Recommended Curbs on Deadly Force*, *supra*.  When CBP released its existing use-of-force policies in March 2014, it appeared that no changes to those policies had been made to reflect PERF's recommendations.  *See* Press Release, DHS Press Office, DHS, CBP, ICE Release Use-of-Force Policies (Mar. 7, 2014), *available at*  http://1.usa.gov/1g6Bfeb (announcing release of *Use of Safe Tactics and Techniques* directive, *available at* http://1.usa.gov/R9A0S1).

22.     Disclosure of the PERF Report is critical to a full and fair public debate about CBP's use-of-force policies and practices.  In particular, release of the PERF Report is necessary to assess why CBP rejected recommendations by the very respected and independent law enforcement think tank whose expertise CBP sought.  One key question, for example, is how CBP allegedly "clarif[ied] existing guidelines contained in the CBP Use of Force Policy" while simultaneously rejecting the PERF Report's recommendations.  *Use of Safe Tactics*, *supra*, at 2.

23.     Members of Congress have urged the release of the PERF Report. *See, e.g.*, Press Release, Senator Menendez Welcomes New Lethal Force Directives

as a Positive First Step (Mar. 7, 2014) ("At current Commissioner of Customs R. Gil Kerlikowske's confirmation hearing, Senator Menendez urged the release of the PERF report and the implementation of its recommendations."), *available at* http://1.usa.gov/1oSxa2A; Adrian Carrasquillo, *Dems, Activists Call for Release of Explosive Border Patrol Report That Criticized Uses of Deadly Force*, BuzzFeed, Mar. 6, 2014 (quoting Rep. Lucille Roybal-Allard: "I once again call on the border patrol to release the PERF report to the public and move quickly to implement its important recommendations."), http://bzfd.it/1nnr9aR.

24. CBP commissioned the PERF Report. *See* Bennett, *supra*. PERF completed the report and submitted it to CBP, relinquishing control over the document. Upon information and belief, CBP now has sole authority to use and dispose of the PERF Report. Moreover, as noted, CBP reviewed the PERF Report before publicly releasing a use-of-force directive.

25. DHS, and its component agencies, routinely fail to respond to properly submitted FOIA requests in the timeframes provided by the statute. For example:

   a. The University of Arizona School of Law and the ACLU of Arizona filed a FOIA request with DHS on January 23, 2014, seeking the disclosure of U.S. Border Patrol records pertaining to tactical and permanent vehicle checkpoint operations in the Tucson and Yuma Sectors, including related records held by CBP or other DHS component agencies. Also on January 23, 2014, the University of Arizona School of Law and the ACLU of

Arizona filed a FOIA request with DHS seeking the disclosure of U.S. Border Patrol records pertaining to "roving patrol" operations, including related records held by CBP or other DHS component agencies. DHS never responded to either FOIA request. On April 28, 2014, the ACLU of Arizona filed suit in federal district court.

  b. The ACLU's Human Rights Program, along with the ACLU of San Diego and Imperial Counties, filed a FOIA request with CBP on February 19, 2014, seeking records providing a variety of statistical information pertaining to individuals the agency had removed from the United States without judicial processes, for example, via expedited removal. Also on February 19, 2014, the ACLU's Human Rights Program and the ACLU of San Diego and Imperial Counties filed a FOIA request with CBP seeking a variety of policy documents relevant to the agency's use of process-free removals. To date, CBP has not responded to either FOIA request.

  c. The ACLU of San Diego and Imperial Counties filed a FOIA request with a DHS component agency on December 18, 2009, seeking records pertaining to a coordinated enforcement operation by that agency in December 2009. The DHS agency never responded to the FOIA request. On March 15, 2010, the ACLU of San Diego and Imperial Counties filed suit in

federal district court, after which the agency finally disclosed responsive documents that shed important light on agency operations.

## FOIA Request

26. On February 21, 2014, Plaintiff submitted a FOIA Request to CBP seeking the disclosure of the PERF Report. *See* Exhibit A (true and correct copy of the Request).

27. Plaintiff sought expedited processing on the ground that there is a "compelling need" for release of the PERF Report because the information requested is urgently needed by an organization primarily engaged in disseminating information (Plaintiff) in order to inform the public about actual or alleged federal government activity (CBP's use of force and policies related thereto). *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. § 5.5(d)(1)(ii).

28. Plaintiff sought a waiver of search, review, and reproduction fees on the grounds that disclosure of the PERF Report is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government," and disclosure is "not primarily in the commercial interest of the requester." *See* 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k)(1).

29. Plaintiff also sought a waiver of search and review fees on the grounds that the ACLU qualifies as a "representative of the news media" and that the PERF

Report is not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii); *see also* 6 C.F.R. § 5.11(d)(1).

30. In addition to submitting the Request through CBP's online system, Plaintiff mailed a hard copy of the Request via certified U.S. mail on February 21, 2014.

31. According to the U.S. Postal Service's tracking system, CBP received the mailed copy of the Request on February 25, 2014. *See* Exhibit B (true and correct copy of Plaintiff's certified mail receipt).

32. To date, neither DHS nor CBP has acknowledged receipt of Plaintiff's FOIA Request.

33. The ten-day statutory period to respond to Plaintiff's request for expedited processing elapsed without any decision from either DHS or CBP. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I); *see also* 6 C.F.R. § 5.5(d)(4).

34. The twenty-day statutory period to respond to Plaintiff's Request has elapsed with no response or determination from either DHS or CBP. *See* 5 U.S.C. § 552(a)(6)(A)(i).

35. DHS and CBP have neither released the PERF Report nor explained their failure to do so.

**Claims**

36. Defendants' failure to make a reasonable effort to search for the record sought violates FOIA, 5 U.S.C. § 552(a)(3), and Defendants' corresponding regulations, *see* 6 C.F.R. § 5.4.

37. Defendants' failure to promptly make available the record sought by the Request violates FOIA, 5 U.S.C. § 552(a)(6)(A), and Defendants' corresponding regulations, *see* 6 C.F.R. § 5.6.

38. Defendants' failure to grant Plaintiff's request for expedited processing as to the Request violates FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendants' corresponding regulations, *see* 6 C.F.R. § 5.5(d).

39. Defendants' failure to grant Plaintiff's request for a waiver of search, review, and duplication fees as to the Request violates FOIA, 5 U.S.C. § 552(a)(4), and Defendants' corresponding regulations, *see* 6 C.F.R. § 5.11(k).

40. Defendants' failure to grant Plaintiff's request for a limitation of fees as to the Request violates FOIA, 5 U.S.C. § 552(a)(4), and Defendants' corresponding regulations, *see* 6 C.F.R. § 5.11(d).

**Requested Relief**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendants' failure to timely respond to Plaintiff's FOIA Request; to grant expedited processing; to conduct a reasonable search;

to waive or limit search, review, and duplication fees; and/or to disclose the requested records is unlawful;

B.  Issue an injunction ordering Defendants to immediately disclose the requested records and to make copies available to Plaintiff at no charge;

C.  Award Plaintiff costs and reasonable attorneys' fees incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

D.  Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Dated:   May 22, 2014      ACLU FOUNDATION OF SAN DIEGO
                           AND IMPERIAL COUNTIES


                           By:  /s/ **Mitra Ebadolahi**
                                MITRA EBADOLAHI
                                mebadolahi@aclusandiego.org

                           Attorney for Plaintiff